The plaintiff appeals from a judgment entered on a verdict of no cause of action. *Page 136 
This suit was instituted to recover damages for the death of Louis Girardin. The decedent, who had a pre-existing crippled foot, was attempting to cross the railroad tracks located at Bridge Avenue and Monmouth Street in Red Bank, while returning to his place of employment, and was instantly killed by a Pennsylvania Railroad train going in a northerly direction. The accident occurred at a place where the intersection of the two streets is diagonally crossed by the right of way of the railroad and where the defendants maintain a crossing for vehicles and pedestrians. At the crossing in question, there are three sets of gates to protect traffic, but the gates when lowered do not extend over the sidewalks.
The plaintiff contends that the defendants, as the train approached the crossing in question, failed and neglected to sound any whistle or bell, or to give a signal of the approach of the train. The defendants concede that the testimony "was conflicting on whether or not the Pennsylvania train involved gave any signal as it approached the crossing, and the testimony was also contradictory on whether or not the gates in question were down before the plaintiff started across the tracks." There was testimony that defendants' employees were operating pneumatic power drills in making repairs, at or near the crossing in question, which may have prevented the decedent from hearing any signal. The jury returned a verdict of no cause of action.
The appellant argues that the learned trial judge erred because:
"the trial court after charging the jury at the request of the plaintiff that the deceased was absolved from stopping, looking and listening before passing over the railroad crossing where gates were operated, contradictorily charged the jury that the existence of the gates, although negligently operated or maintained, did not absolve the deceased from the duty of observation."
The statutes applicable to the instant matter are R.S.
48:12-82 and R.S. 48:12-84 and were read by the trial court to the jury. Section 82 provides that, where a
"railroad company shall have assumed to establish and maintain safety gates, and such gates were not down at least *Page 137 
half a minute before such locomotive or train crossed the highway * * *, the question whether the person so killed or injured was or was not guilty of contributory negligence shall be a question to be determined by the jury * * *."
Section 84 provides that:
"Whenever a railroad shall install any safety gates, bell or other device designed to protect the traveling public at any crossing, or has placed at such crossing a flagman, any person * * * shall, during such hours as posted notice at the crossing shall specify, be entitled to assume that the safety gates or other warning appliances are in proper order and will be duly and properly operated * * *."
Both the plaintiff and the defendants submitted to the trial court their respective requests to charge the jury. The court read to the jury requests Nos. 6 and 7 submitted by the plaintiff, as follows:
"No. 6. The deceased, Mr. Girardin, was entitled to assume that it was safe for him to cross the tracks if the safety gates were up.
"No. 7. If the safety gates were up, the deceased, Mr. Girardin, was absolved from stopping, looking and listening."
The court also read to the jury the defendants' request to charge 7, which reads as follows:
"7. If you find that the defendant, New York and Long Branch Railroad Company, was negligent in the operation of the gates or the maintenance of other safety requirements at the crossing in question, this does not absolve the deceased about to cross the tracks from the duty of making any independent observation for the purpose of ascertaining whether or not a train is coming to the crossing."
When the court read to the jury R.S. 48:12-84, it in effect instructed the jury that the decedent was "entitled to assume that the safety gates or other warning appliances were in proper order and would be duly and properly operated."
When the court charged the jury with the defendants' seventh request, it in effect instructed the jury that the decedent was not absolved from his duty to make an independent observation as to whether or not a train was approaching the crossing, even though the defendants were negligent in the *Page 138 
operation of the gates and in the maintenance of other safety requirements.
It is obvious that the jury must have been confused when, on the one hand, it was charged that, if the safety gates were up, the decedent was absolved from stopping, looking and listening when he started his crossing, and, on the other hand, even though there was negligence in the operation of the gates and in the maintenance of other safety requirements, the decedent was not absolved of his duty to make an independent observation as to whether or not a train was approaching the crossing in question. The two instructions were contradictory.
It is apparent to us that the contradiction of the two instructions was inevitably confusing and harmful to the appellant. It was manifestly error for the trial court to instruct the jury as indicated. The jury could not have known which rule of law to apply.
In Tischler v. West Jersey and Seashore Railroad Co.,110 N.J.L. 473, this court considered a similar situation, where the appellant contended that "there was a duty upon the traveler, approaching a guarded crossing, to look and listen for approaching trains" and unanimously held adversely to the appellant, citing the authority of Fernetti v. West Jersey andSeashore Railroad Co., 87 Id. 269, and Snuffin v. McAdoo,Director-General, 93 Id. 231, that "the rule is clear, that under such circumstances, as are here disclosed, the plaintiff's intestate was absolved from stopping, looking and listening before passing over such railroad crossing." The appellant's decedent, under the statute, was entitled to rely on the safety warnings provided by the defendants and, as there was no proof that the safety warnings were out of order, decedent "was entitled to assume that it was safe for him to cross the tracks."Snuffin v. McAdoo, Director-General, supra; Hendrickson v.West Jersey and Seashore Railroad Co., 102 Id. 310.
There was proof that the safety gates had not been lowered when the decedent entered upon the crossing and the trial court in charging the defendants' seventh request to the jury placed upon the decedent a duty to make an independent *Page 139 
observation when the decedent was "entitled to assume that the safety gates or other warning appliances were in proper order."
The appellant's other ground of appeal states that the trial court erred when it charged the jury "that there was no obligation on the part of the defendants to provide crossing gates over the sidewalk." Neither the appellant nor the defendants submitted any statutory authority specifically requiring the erection or operation of crossing gates over the sidewalk adjoining a railroad crossing. We consider it unnecessary to pass upon this point in view of our opinion that the trial court committed reversible error in charging the jury in the aforesaid contradictory manner.
The judgment under review is reversed, and a venire de novo
awarded.
For affirmance — None.
For reversal — THE CHANCELLOR, PARKER, BODINE, DONGES, HEHER, PERSKIE, COLIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 15.